# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EGHOMWARE IGBINOVIA,<br><br>Defendant. | Case No. 2:19-cr-00154-RFB-MDC<br><br>**ORDER** |

Before the Court is Defendant Ehomware Igbinovia's (ECF No. 418) Motion to Dismiss Counts One and Eighth Through Twenty of the Indictment for Failure to State an Offense. For the following reasons, the Court grants Igbinovia's Motion.

## I.   RELEVANT PROCEDURAL AND FACTAUL BACKGROUND

Defendant Igbinovia is the owner and lead licensed pharmacist at ACRx Pharmacy. He is authorized to dispense controlled substances by the Drug Enforcement Agency ("DEA"). On June 19, 2019, an indictment was filed charging Igbinovia and others with violating the Controlled Substances Act ("CSA"). ECF No. 1. The indictment charges Igbinovia with conspiracy to distribute the controlled substance Buprenorphine under 21 U.S.C. §§ 841, 841(b)(1)(E), 846 and 18 U.S.C § 2 (Count One), and eight counts of distribution of Buprenorphine under 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i), 21 C.F.R. § 1306.4, and 18 U.S.C. § 2 (Counts Eighth through Twenty). Id.

The introductory paragraph of the indictment states "[w]ith limited exceptions for medical professionals, the CSA makes it 'unlawful for any person knowingly or intentionally . . .

to manufacture, distribute, or dispense . . . a controlled substance." Id. at 2. For Count One, the indictment alleges in relevant part: "defendants herein, did knowingly and intentionally conspire, confederate, and agree with each other . . . to commit an offense against the United States, to wit: distribute quantities of buprenorphine, a Schedule III controlled substance . . ." Id. at 6. For Counts Eight through Twenty, the indictment alleges in relevant part: "Eghomware Igbniovia . . . did knowingly and intentionally create, distribute and dispense a mixture and substance containing a detectable amount of Schedule III controlled substances, to wit, buprenorphine . . . without a legitimate medical purpose and outside the usual course of professional practice . . ." Id. at 7-8.

On November 18, 2024, Igbinovia filed the instant Motion to Dismiss the indictment against him for failure to state an offense. ECF No. 418. As of December 9, 2024, the Motion to Dismiss was fully briefed. ECF Nos. 434, 451-52. On May 8, 2025, the parties stipulated to a supplemental briefing schedule due to a change in Igbinovia's counsel, which the Court granted. ECF Nos. 478-79. On May 30, 2025, the Government filed a supplement to its Opposition, and on June 6, 2025, Igbinovia filed a supplement to his Reply. ECF Nos. 485, 486.

The Court's Order on the Motion to Dismiss follows.

## II.     LEGAL STANDARD

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment before trial on the ground that the indictment "fail[s] to state an offense." An indictment is sufficient if it contains "the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." United States v. Awad, 551 F.3d 930, 935 (9th Cir. 2009) (citing United States v. Aber, 56 F.2d 1106, 1111 (9th Cir. 1995)). The test is "not whether [the indictment] could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." Id.

"[A]n indictment missing an essential element that is properly challenged before trial

*must* be dismissed." United States v. Qazi, 975 F.3d 989, 991 (9th Cir. 2020) (citing United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) (emphasis in original). "Although an indictment tracking the language of a statute is usually adequate because statutes usually include all the elements of a crime, an indictment is inadequate when it fails to allege an essential element of the offense even when it tracks the language of the statute." United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979). This ensures that a defendant is not "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." Id.

In determining whether an indictment charges a cognizable offense, the court is "bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." United States v. Kelly, 874 F.2d 1037, 1046-47 (2017). The indictment itself should be read as a whole, construed according to common sense, and interpreted to include facts which are necessarily implied. United States v. Berger, 473 F.3d 1080, 1103 (9th Cir. 2007).

### III.   DISCUSSION

Defendant Igbinovia challenges the failure of the indictment to state an offense under the Controlled Substances Act, 21 U.S.C. § 841, as interpreted by Ruan v. United States, 597 U.S. 450 (2022), which was decided after he was charged. Section 841 makes it a federal crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." 21 U.S.C § 841(a). This "except as authorized" clause has been interpreted as referring to the authorization of a medical professional to dispense controlled substances "for a legitimate medical purpose . . . acting in the usual course of his [or her] professional practice." 21 C.F.R. § 1306.04(a). The Supreme Court in Ruan interpreted the provision to require the Government to prove that a medical practitioner defendant *knowingly or intentionally* acted in an unauthorized manner, in order to convict them under the CSA. 597 U.S. at 454.

The Supreme Court in Ruan did not determine if the authorization clause is an essential element of a CSA offense for purposes of pleading requirements in an indictment. See id. at 462-

63 (assuming *arguendo*, without deciding, that the Government need not set forth in an indictment a lack of authorization). However, the Ninth Circuit held that lack of authorization is a pleading requirement long before Ruan was decided.  In U.S. v. King, the Ninth Circuit explained "lack of authorization to dispense [the drug]" is "an essential element of the offense" under the CSA and dismissed an indictment for failure to allege that element. 587 F.2d 956, 963 (9th Cir. 1978); see also U.S. v. Kim, 298 F.3d 746, 750 (9th Cir. 2002) (explaining "except as authorized" must be pled in the indictment of a medical practitioner).

The Court first evaluates the sufficiency of Count One, which charges Igbinovia with conspiracy under the CSA. Count One includes no allegation of lack of authorization, as it does not contain the "without a legitimate medical purpose and outside the usual course of professional practice" language present in the other charges. Accordingly Count One fails to state an offense irrespective of the heightened *mens rea* requirement set forth in Raun. See King, 587 F.2d at 963-64 (holding an indictment for conspiracy under the CSA was deficient due to its failure to allege that the defendant acted outside the scope of the medical exception). Curiously, the Government argues the without authorization element need not be pled for a conspiracy charge under the CSA and discusses how other cases cited by Igbinovia did not address the pleading requirements for a conspiracy to distribute count. But King itself, the decision that first held the "without authorization" clause was an essential element of an offense under the CSA for purposes of an indictment of a medical professional, concerned an indictment and conviction for conspiracy to distribute. Id. ("In a jury trial appellants . . . were convicted of conspiracy to possess cocaine with intent to distribute it.") (citing 21 U.S.C. § 846). And that requirement is consistent with the rule that "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." United States v. Collazo, 984 F.3d 1038, 1320 (9th Cir. 2021) (quoting United States v. Feola, 420 U.S. 671, 686 (1975)). That Count One failed to include an essential element of the offense was thus clear under existing precedent at the time the indictment was filed. Therefore, Count One must be dismissed.

The sufficiency of the indictment with regards to Counts Eight through Twenty turns on

whether the heightened *mens rea* requirement set forth in Ruan requires not only that the Government plead that Igbinovia acted without medical authorization, but *knowingly or intentionally* acted without medical authorization. Those Counts allege that Igbinovia acted "without a legitimate medical purpose and outside the usual course of professional practice." The Court finds the reasoning in U.S. v. Wells, 672 F. Supp. 3d 1066 (D. Nev. 2023), which held that an indictment with similar language was deficient under Ruan, persuasive, and agrees with the Wells court's conclusion that the subjective *mens rea* clarified in Ruan must be pled as part of the medically unauthorized element. As the Court in Wells pointed out, the Ninth Circuit has held under analogous circumstances that a heightened *mens rea* requirement—where clarified in a Supreme Court decision after an indictment was filed—is an essential element of an offense. See Wells, 672 F. Supp. 3d at 1070 (citing United States v. Rehaif, 588 U.S. 225 (2019) and United States v. Quazi, 975 F.3d 989, 992 (9th Cir. 2020)). Accordingly, since lack of medical authorization was already an essential element of a CSA offense in the Ninth Circuit, Ruan clarified the subjective *mens rea* narrows that element, and it therefore must be plead as such in an indictment.

Despite the Government's argument to the contrary, the Court finds that the Ninth Circuit's decision in United States v. Enriquez, 131 F.4th 940 (9th Cir. 2025) does not require a different outcome than that reached in Wells. In Enriquez, the Ninth Circuit held that Ruan imposed no pleading requirement on the Government with regards to a safe harbor provision in the Anti-Kickback Statute ("AKS"), 18 U.S.C. § 371, which provides that healthcare kickbacks are not prohibited if they are payments from an employer to a *bona fide* employee for employment-related items or services. Id. at 942-43. The Ninth Circuit reasoned that this safe harbor provision was an affirmative defense that need not be pled in an indictment, unlike the authorization exception under the CSA which, as discussed by the Wells court, "was already considered an element in the Ninth Circuit." Enriquez, 131 F.4th at 946 (citing Wells, 672 F. Supp. 3d at 1071). The Court in Enriquez thus declined to "extend Ruan to (a) the AKS and (b) pleading requirements" since "Ruan provides no reason to stray from the bedrock principle that indictments need not allege affirmative defenses . . ." Id. at 946-47. To the extent this portion of

the Enriquez decision can be read, as the Government insists it should, as disagreeing with Wells and holding that the "Ruan-added *mens rea*" need not be pled in an indictment under the CSA, such a holding would be *dicta*, because the Enriquez decision concerned an entirely separate statute. Accordingly, the Government's proffered reading of Enriquez would not be binding on this Court.

Ultimately, the Court finds the constitutional considerations underlying the requirement that an indictment allege each essential element of an offense warrant including the Ruan *mens rea* as part of the unauthorized element, which the Ninth Circuit has already held is essential and must be pled. As the Ninth Circuit noted in Quazi, "[w]hen the Supreme Court interprets a criminal statute in a way that narrows the scope of criminal conduct, we view the statute as always having meant what the Supreme Court now says it does." 975 F.3d at 994, n. 3. Here, the Supreme Court held that the CSA's exception for medical professionals narrows the scope of criminal conduct to encompass only the distribution of a controlled substance that said professional *knows and intends* to be medically unauthorized. The failure to allege as much in the indictment of Igbinovia indicates that the grand jury may not have considered or been presented facts regarding Igbinovia's subjective intent. This is because the allegation that Igbinovia acted "without a legitimate medical purpose and outside the usual course of professional practice" suggests "an objective standard of medicine" that "would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor not on the mental state of the defendant" himself. Ruan, 597 U.S. at 465, 467 (citations omitted).

Given the important protection a grand jury provides a criminal defendant, the Court is not persuaded by the Government's argument that the heightened *mens rea* clarified in Ruan has no bearing on its pleading requirements. See Duncan v. State of La., 391 U.S. 145, 151 (1968) (noting the grant and trial juries form a "'strong and two-fold barrier ... between the liberties of the people and the prerogative of the [government].'") (quoting W. Blackstone, Commentaries on the Laws of England 349 (T. Cooley ed. 1899); see also Keith, 605 F.2d at 464 ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting

attorney or judge.") (quotation and citations omitted).

The Government alternatively argues that the language of the indictment *did* in fact plead the *mens rea* requirement because it alleged Igbinovia "did knowingly and intentionally create, distribute and dispense a mixture and substance containing . . . buprenorphine . . . without a legitimate medical purpose and outside the usual course of professional practice . . . ." The Government asserts the Court should read the single "knowingly and intentionally" qualifier at the start of each Count as applying equally to the lack of medical authorization as it does to the creation, distribution, and dispensing of buprenorphine. Indeed, that reading is consistent with how the Supreme Court in Ruan interpreted the statutory text of § 841, and the indictment follows that statutory text. However, "[a]lthough an indictment tracking the language of a statute is usually adequate because statutes usually include all the elements of a crime, an indictment is inadequate when it fails to allege an essential element of the offense even when it tracks the language of the statute." Keith, 605 F.2d at 464.

Moreover, as the Ninth Circuit in Keith reasoned, where a statute's language is vague such that it does not have a "sufficiently precise" meaning to convey its legal content to an ordinary person, judicial interpretation which narrows the scope of that statute is not automatically attributed to the statutory language itself. Id. at 464-65. In Keith, the Ninth Circuit held the phrase "without due caution and circumspection" in a manslaughter statute, which had been judicially interpreted as requiring a *mens rea* of gross negligence and actual knowledge, was vague such that the *mens rea* had to be specifically and separately pled in an indictment. Id. Because the indictment in Keith merely included the "without due caution and circumspection" language of the statute, without pleading the *mens rea* of gross recklessness and actual knowledge, the Court held it was deficient. Id.

Here, the Court finds the language in the text of the CSA statute, which is followed in the indictment, is vague, as evidenced by the disagreements about its meaning within the Ruan opinion itself. See Ruan, 597 U.S. at 470-71 (Alito, J., concurring) ("As a matter of elementary syntax, the adverbs 'knowingly' and 'intentionally' are most naturally understood to modify the verbs that follow, *i.e.*, "manufacture," "distribute," etc., and not the introductory phrase "except

as authorized.") (noting the Ruan majority reached its conclusion without reliance on syntax or grammar); see generally Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts (2012) ("Nearest-Reasonable-Referent Cannon[:] When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent."). Like the statutory language in Keith, judicial interpretation of this, and similarly structured statutory language, is inconsistent and thus not sufficiently precise to convey its legal meaning in the context of an indictment. See e.g., United States v. X-Citement Video, Inc., 513 U.S. 64, 68 (1994) (rejecting "the most natural grammatical reading" of a statute which suggests "that the [adverb] 'knowingly' modifies only the surrounding verbs[.]"). Because the Court must read the indictment "in its entirety, construed according to common sense," rather than read the indictment solely under principles of statutory interpretation, it seems appropriate to adopt the more "natural grammatical reading" of the allegations in the indictment. In other words, to imbue the language in the indictment with judicially interpreted statutory meaning announced by the Supreme Court, several years after it was drafted, would be inconsistent with common sense and with the purpose of an indictment in the context of grand jury proceedings. Berger, 473 F.2d at 1103.

Accordingly, the Court finds that the phrase "did knowingly and intentionally" naturally reaches to "create, distribute and dispense" but not to the authorization clause. Put another way, the indictment's phrase "without a legitimate medical purpose and outside the usual course of processional practice" is as an objective standard, not the subjective standard required by Ruan. That the indictment here was employing an objective standard becomes especially apparent when compared with the language of an indictment held to be consistent with the subjective *mens rea* under Ruan. See U.S. v. Pham, 120 F.4th 1368 (9th Cir. 2024) (holding an indictment charging the defendant with acting with intent "to act outside the usual course of professional practice and without a legitimate medical purpose" adequately pled the Ruan *mens rea*). This is the most natural reading, especially when read in connection with the introductory paragraph, where "knowingly or intentionally" refers only to the verbs "to manufacture, distribute, or dispense," and "limited exceptions for medical professionals" is referenced without mention of a medical

professional's subjective mental state. Further, the Court finds this is the most common-sense reading because, of course, the indictment was drafted before Ruan was decided, when the belief was that an objective standard governed the without authorization element.

In sum, because the Court reads the indictment as pleading an objective standard for the without authorization element, rather than the subjective *mens rea* clarified in Ruan, Counts Eighth through Twenty of the indictment fail to "set forth each and every element of the offense" under the CSA against Igbinovia, and are thus fatally deficient. United States v. Davis, 333 F.4th 1236, 1240 (9th Cir. 2022).

### IV. CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that Defendant Eghomware Igbinovia's Motion to Dismiss (ECF No. 418) is **GRANTED**. Counts One and Eighth through Twenty against Defendant Igbinovia are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the (ECF Nos. 441, 442, 442) Motions to Seal are **GRANTED**.

**IT IS FURTHER ORDERED** that the calendar call set for October 2, 2025, jury trial set for November 3, 2025, and all other pending deadlines as to Defendant Igbinovia are **VACATED.**

**DATED:** September 3, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**